## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JANE DOE,

        Plaintiff,                                 Case No.:

v.

RUSSELL WENDELL SIMMONS,

        Defendant.

_____ /

## COMPLAINT

Plaintiff Jane Doe, by and through her undersigned counsel, makes the following allegations against Defendant Russell Wendell Simmons upon personal knowledge as to her own acts and status and upon information and belief as to all other matters:

## INTRODUCTION

1.     This lawsuit chronicles the account of how a woman who, while pursuing her career and passion as a music executive, was sexually harassed, assaulted, sexually battered, and raped by her boss, Russell Simmons, a rich and powerful celebrity whose wealth and influence allowed his abusive behavior to go unchallenged for decades.

2.     Russell Simmons is a music producer and mogul and the co-founder of Def Jam Recordings. Considered by many to be the "king of hip hop," Mr. Simmons made Def Jam the

defining rap label of its era.[1]  Even after Mr. Simmons sold his stake in Def Jam for a reported $100 million in 1999, he served as an ambassador for hip-hop through comedy (Def Comedy Jam), clothing (Phat Farm) and activism.

3.      Ms. Doe is an accomplished film producer.  She worked as a senior level music executive at Def Jam Recordings.  Under her leadership, the video production division experienced rapid growth and expansion, producing higher quality videos that MTV then sought to play.  She successfully attracted renowned directors and high-end production creatives to participate in Def Jam projects.  This significantly expanded the label's presence on MTV.  Def Jam experienced increased airtime and exposure for their artists, leading to greater sales.

4.      Ms. Doe's career in the music industry was disrupted and derailed by a devastating experience at the hands of Mr. Simmons.  While at first Mr. Simmons and Ms. Doe had a professional working relationship, Mr. Simmons revealed his true colors and, through his assaultive behavior, disabled Ms. Doe's career at Def Jam, a job she loved, at the height of her success and financial viability.

5.      One day, Ms. Doe was required to visit Mr. Simmons's apartment, located in Manhattan, New York, in the Southern District of New York, where he typically held meetings, to have him review a new video for approval.  Initially, Mr. Simmons began to "wrestle" with Ms. Doe in an attempt to appear playful.  The situation escalated into aggression and Mr. Simmons pinned Ms. Doe down on a bed.  Ms. Doe repeatedly told Mr. Simmons to get off of her, but he refused.  Mr. Simmons proceeded to rape her.

---

[1] Joe Coscarelli and Melena Ryzik, *Music Mogul Russell Simmons Is Accused of Rape by 3 Women*, New York Times (Dec. 13, 2017), https://www.nytimes.com/2017/12/13/arts/music/russell-simmons-rape.html.

6.      Ms. Doe was wrought with distress.  At the peak of her career success at Def Jam, making award-winning videos for their biggest artists, she experienced overwhelming anxiety, shame, humiliation and debilitating low self-esteem.  She suffered frequent panic attacks, struggling to go to the Def Jam offices or to function in her leadership role.  She tried to continue to work at Def Jam, but just a short time after the assault, to the surprise of peers and colleagues, she gave notice, quit the job she loved, and moved across the country to California.  She eventually confided in a small group of trusted friends and therapists about what happened—long before the passage of New York's Adult Survivors Act in 2022.

7.       Ms. Doe's shocking experience at the hands of Mr. Simmons is unfortunately just one of many.  Over twenty women have accused Mr. Simmons of sexual harassment or assault.[2] Generally, the victims did not know each other and there is a striking similarity of a pattern of behavior in most of the alleged assaults by Mr. Simmons.  To stress the enormity of the issue, once his crimes became known Mr. Simmons was forced to resign from many of his business ventures and several of his charitable organization boards.

8.      This complaint requests general, punitive, and economic damages for loss of employment, loss of business opportunities, loss of wages, and to compensate Ms. Doe for injuries suffered as a result of the unlawful conduct alleged herein.

### PARTIES, JURISDICTION, AND VENUE

9.      Plaintiff Jane Doe is domiciled in Los Angeles, California.

---

[2] Sharon Lynn Pruitt, *Who Are The Many Women Who Have Accused Russell Simmons Of Sexual Misconduct?*, Oxygen (Jun. 15, 2020), https://www.oxygen.com/true-crime-buzz/russell-simmons-accusers-who-are-they-and-what-are-their-stories.

10.     Defendant Russell Wendell Simmons is domiciled in New York, New York.

11.     The amount in controversy in this action exceeds the sum or value of $75,000.00 excluding interest and costs and is between citizens of different states.  Accordingly, subject matter jurisdiction is proper under 28 U.S.C. § 1332.

12.     This Court has personal jurisdiction over this matter, as Mr. Simmons sexually assaulted and raped Ms. Doe in New York, New York.

13.     This action has been timely filed under New York's recently passed Adult Survivors Act (S.66A/A.648A), N.Y. C.P.L.R. § 214-j (hereinafter the "ASA"), which, beginning on November 24, 2022, created a one-year lookback window for the survivors of sexual assault that occurred when they were over the age of 18, allowing them to sue their abusers regardless of when the abuse occurred.  Like the Child Victims Act, N.Y. C.P.L.R. § 214-g, the ASA is a landmark piece of legislation for survivors of sexual abuse to file claims otherwise barred by the statute of limitations.  Ms. Doe has also timely filed under the Gender Motivated Violence Act, Administrative Code of City of N.Y. § 10–1101, *et seq*, which provides a lookback window for the survivors of gender-motivated violence through March 1, 2025.

14.     The actions described herein constitute sexual offenses by Mr. Simmons under New York Penal Law Article 130 and were committed against Ms. Doe when she was over the age eighteen years, for which she suffered physical, psychological, and other significant injuries as a result.

15.     The events giving rise to these causes of action occurred in the Southern District of New York, specifically in Manhattan, New York, where Mr. Simmons sexually assaulted and raped Ms. Doe.  Thus, venue in this district is proper.  28 U.S.C. § 1391(b)(2).

4

## FACTUAL ALLEGATIONS

### A.   Jane Doe

16.     Jane Doe is over the age of eighteen and has worked in the music and entertainment industry for over 25 years.

17.     In or around the early 1990s, Ms. Doe started producing music videos.  Many of the videos she produced were for Def Jam, though at the time she had her own independent production company.  During the mid-1990s, Ms. Doe went in-house and worked for Def Jam. While at Def Jam, she was responsible for supervising all film production and a demanding release schedule for a large artists roster.  Ms. Doe worked in collaboration with numerous directors, executives, and many iconic music artists to devise concepts for ground-breaking campaigns directed at a global youth market.  Her videos received multiple awards including from Billboard and MTV.

18.     After Mr. Simmons assaulted her, Ms. Doe quit Def Jam in 1997 and worked as an executive producer for film and commercial production companies.  She ran divisions to make visual music content, including music videos, live concert films and music documentaries.  Ms. Doe brought in new business, signed exciting new talent, collaborated with A-list film directors on projects, supervised sales teams in procuring creative and lucrative accounts, and supervised all production.

19.     Despite her successes, Ms. Doe found it difficult to be an effective employee or remain in a position for more than a few months, experiencing the effects of trauma from Mr. Simmons's assault.  She had radically changed from the confident and enthusiastic executive known for excellent coping skills in the face of chaos.  She struggled in her relationships with employers.  When she encountered conflict with a superior, she became overwhelmed with anxiety

and had to disengage.  This was the opposite of how she was before the assault — an exemplary employee who could handle any conflict, known for positive and productive relationships with crew, artists, and employers.  Her value as a problem solver and diplomat in very challenging and demanding work environments diminished significantly.  After the assault, she became a completely different person.

20.      Nevertheless, from 2000 to 2018, Ms. Doe was employed by numerous studios on projects as a writer and producer, including: Netflix, 20th Century Fox, CBS Films, Columbia Pictures, Warner Brothers, and New Line Cinema. Currently, Ms. Doe has a family film set up at Netflix and is adapting a children's book as a feature film.

**B.      Russell Simmons**

21.      Russell Simmons is a pioneering hip-hop and business mogul considered by many to be the "king" and "face" of hip-hop.  Mr. Simmons made Def Jam Recordings the defining rap label of its era with numerous iconic hip-hop hits.  His influence and control throughout both music and film is undeniable.

22.      In the early 1980s, before he co-founded Def Jam with Rick Rubin, Mr. Simmons was already a powerful figure in the emerging rap industry.[3]  He worked as a promoter, managed several budding hip-hop acts, including Run-D.M.C. (co-founded by Mr. Simmons brother, Joseph "Run" Simmons), Whodini, and Kurtis Blow, and also did production work.

---

[3] Elias Leight, *Russell Simmons Sexual Assault Allegations:  A Timeline*, Rolling Stone (Feb. 9, 2018), https://www.rollingstone.com/music/music-news/russell-simmons-sexual-assault-allegations-a-timeline-202515/.

23.     In 1984, after Mr. Rubin's departure, Mr. Simmons ran Def Jam with new partner Lyor Cohen.  He also started to expand his footprint outside of music by founding the Simmons Lathan Media Group in 1989.

24.     Mr. Simmons would continue to expand outside of music in the 1990s, launching a series of ventures.  In 1992, he co-created and launched Def Comedy Jam, an HBO series devoted to black comedians that ran through 1997.  He also co-founded Phat Fashions, a successful clothing business, and was increasingly involved in producing movies, including the 1996 Eddie Murphy movie *The Nutty Professor*.

25.     Around this time, Mr. Simmons discovered yoga.  In a 2016 interview with the New York Times, he said, "I went [to my first class] because there were a lot of hot girls and no guys, except for gay guys who didn't want the girls."[4]

26.     In 1999, Mr. Simmons and his partners sold their stake in Def Jam for a reported sum of $100 million to Seagram.

27.     In 2002, Mr. Simmons launched another HBO series, *Russell Simmons Presents Def Poetry*.  The show was hosted by Yasiin Bey (then known as Mos Def) and aired between 2002 and 2007.  The show was also transformed into a Tony-winning Broadway production.

28.     In 2004, Mr. Simmons made an estimated $140 million negotiating the sale of Phat Fashions to Kellwood.

---

[4] Sheila Marikar, *Russell Simmons, the Yoga King of Los Angeles*, New York Times (Nov. 17, 2016), https://www.nytimes.com/2016/11/17/fashion/russell-simmons-yoga-los-angeles-tantris.html.

29.     In 2008, Mr. Simmons fashioned himself as a "self-help guru," publishing the book *Do You!: 12 Laws to Access the Power in You to Achieve Happiness and Success*, with a forward by Donald Trump.  He followed that up with *Super Rich: A Guide to Having It All in 2011*.  He would publish two more self-help books in 2015, one on living as a vegan and another on the value of meditation.

30.     In 2013, Mr. Simmons co-launched the company All Def Digital, which began as a YouTube network, in conjunction with DreamWorks Animation's Awesomeness TV.

31.     In 2016, Mr. Simmons transformed his interest in yoga into another business venture by opening Tantris, an 8,000 square-foot, L.A.-based "wellness center" with an accompanying athleisure line.  Mr. Simmons has completed a Luxury Health and Wellness Hotel in Bali, Indonesia.  The resort boasts being a premier destination for yoga retreats amidst luxury accommodations.

32.     Mr. Simmons's net worth is estimated to be $340 million.

33.     In 2017, following accusations of sexual assault and rape, Mr. Simmons announced plans to step down from his various corporate roles.  HBO also severed all ties with Mr. Simmons and removed his name from *All Def Comedy*.

## C.     Mr. Simmons's Assault on Ms. Doe

34.     Sexual harassment is pervasive in the music industry writ large.[5]

---

[5] *See, e.g.*, Believe, TuneCore, and Luminate, *Study – BE THE CHANGE: Gender Equality in the Music*, https://www.tunecore.com/wp-content/uploads/sites/12/2023/03/2023-Be-the-Change.pdf ("34% of women in the industry had experienced sexual harassment or abuse").

35.     However, when Ms. Doe first met Mr. Simmons, he was not flirtatious with her at all.  In fact, they ran into each other and spoke many times in her capacity as an independent producer contracted to make Def Jam videos before she officially started to work at Def Jam in the mid-90s. They were professional colleagues.  Once employed at Def Jam, a professional relationship with Mr. Simmons continued and Ms. Doe would deliver music videos to Mr. Simmons's apartment for review with no incident.

36.     In fact, the practice at the time was so common that many people worked in and out of Mr. Simmons's apartment.  Mr. Simmons rarely sat at a desk; he would be on the treadmill or on his couch when both women and men would come over to conduct business.  Ms. Doe's colleagues at Def Jam and other executives and artists frequented Mr. Simmons's apartment on a regular basis, sometimes working there; it was a very casual environment for everybody.

37.     Mr. Simmons called people over to his Manhattan apartment all the time when he did not want to come to the office, as he lived nearby the office.  If an employee or colleague could not get ahold of Mr. Simmons at the office and thus could not move forward on a project without his approval, it was common to head over to Mr. Simmons's apartment in order to show him something or get approval.

38.      Before the assault, Mr. Simmons suddenly began to turn his rapacious attention toward Ms. Doe.  Mr. Simmons would arrive at Def Jam, enter Ms. Doe's office, and shut the door behind him.  He would sit on her desk, lean over her, aggressively invading her personal space while making sexual innuendos, suggestions, and advances, and rubbing the front of his pants.  Mr. Simmons would follow Ms. Doe to the door or block her path to prevent her from opening it again. This happened repeatedly during that time period.

9

39.     Mr. Simmons's harassment of Ms. Doe in the office was so pervasive that when a senior executive became aware Mr. Simmons was in the building and had gone to her office, he immediately went to Ms. Doe's office, banged on the door and opened it to yell at Mr. Simmons to leave.

40.     On one occasion, Ms. Doe brought to Mr. Simmons's apartment a rough cut of a video she needed him to view for approval.  Mr. Simmons aggressively and relentlessly flirted with Ms. Doe, made sexual innuendos and advances, asked sexually explicit questions, including personal questions about her sexual preferences and questioning if she was currently wearing a bra.  On this day, Ms. Doe was wearing professional attire, including a suit jacket and pants.  Ms. Doe responded by telling Mr. Simmons to "cut it out" and "stop it," trying to deflect his attention, refocus on the work, while trying not to sound accusatory or bruise his ego.

41.     Mr. Simmons brought Ms. Doe to a bedroom to watch the rough cut. It was not uncommon practice for Mr. Simmons to conduct business in a bedroom while sitting on the bed. Mr. Simmons had a childlike and playful demeanor and began jumping on the bed while continuing to make sexual advances and asking Ms. Doe to have sex with him.  Ms. Doe responded by saying "no," and treating the suggestion as though it was a ridiculous idea while being cautious not to offend Mr. Simmons.

42.     All of a sudden, Mr. Simmons performed a "wrestling move," climbing on top of Ms. Doe and pinning her arms down on the bed.  Ms. Doe began to sweat profusely.

43.     Mr. Simmons then sat on top of Ms. Doe, insisting they should have sex.  Ms. Doe rejected his advance and told him to "get off" and "stop" several times.  She told him she was "serious" and she "meant it."  But Ms. Doe was forcefully pinned, could not move under his weight and Mr. Simmons would not listen to her.  She tried repeatedly to get up.

10

44.     Undeterred, Mr. Simmons ignored Ms. Doe's resistance and proceeded to rape her. After it was over, Mr. Simmons left the room.   As Ms. Doe pulled herself together to leave, Mr. Simmons called Ms. Doe to a bathroom where he was now taking a bath with the door open and attempted to talk about work for a few minutes before dismissing Ms. Doe to go back to the office.

**D.     Aftermath**

45.     After the assault, Ms. Doe went back to the office, but was forever changed.   For weeks she told no one about what happened.   She experienced severe dissociation, depression, and anxiety.   She no longer went to the Def Jam offices regularly to work and came up with reasons to work from her nearby apartment.

46.     A short time later, Ms. Doe gave notice, left Def Jam and left New York altogether to move to California where her family was living.   Because of Mr. Simmons, Ms. Doe gave up her high-powered, dream job running a thriving division she had built and a large salary. The pride she had for her role in helping transition a marginalized music genre to one of the most popular and lucrative in the world, was gone.

47.     Ms. Doe took a series of short-lived positions in Los Angeles, marketing her skills as a crossover brand creator, bringing her experience in diversity and hip-hop to Hollywood and creating music video divisions for commercial and film companies.   But at the same time, she was experiencing debilitating anxiety, had difficulty handling emotions in a professional setting, unexplained mood shifts, and severe depression.   Formerly an exemplary employee with nothing but positive and productive relationships with male employers, Ms. Doe became defensive, anxious, and sensitive.   Her value as a leader, problem solver and diplomat diminished significantly.   Interactions with male employers were fraught with tension, the slightest conflict became heightened and emotional.   She suffered panic attacks and developed an eating disorder.

She sought therapy and was diagnosed with general anxiety disorder.  In a two-year period after the assault, Ms. Doe left three jobs at high-end production companies after struggling to handle stressful interactions or conflicts with her employers.

48.     2017 was a year of reckoning for sexual abusers and harassers whose power and wealth had previously shielded them from accountability.  The #MeToo Movement exploded into a global phenomenon, and seemingly untouchable people in power suddenly found their past actions catching up with them.

49.     In November 2017, Mr. Simmons and filmmaker, Brett Ratner, were accused of teaming up to engage in a sexual assault against model, Keri Claussen Khalighi.[6]

50.     On December 13, 2017, *The New York Times* published an extensive article on Mr. Simmons, where multiple women came forward accusing Mr. Simmons of sexual assault.[7]  In each case described in the article, numerous friends and associates confirmed that they were told of the incidents at the time of the assaults several years prior.

_____

[6] Hilary Lewis, *Russell Simmons and Brett Ratner Accused of Teaming Up to Engage in Sexual Misconduct*, The Hollywood Reporter, https://www.hollywoodreporter.com/news/general-news/russell-simmons-brett-ratner-accused-teaming-up-engage-sexual-misconduct-1059839/ (Nov. 19, 2017).

[7] *See* Joe Coscarelli and Melena Ryzik, *Music Mogul Russell Simmons Is Accused of Rape by 3 Women*, New York Times (Dec. 13, 2017), https://www.nytimes.com/2017/12/13/arts/music/russell-simmons-rape.html.

51.     In 2020, the documentary *On the Record* premiered at Sundance and was released digitally on HBO Max.[8] Like the *New York Times* article, this documentary covered the allegations of rape and sexual misconduct against Mr. Simmons.

52.     When Ms. Doe learned about the accounts of the other survivors, she was struck by how similar they were to her own horrible experience at the hands of Mr. Simmons.  Ms. Doe revealed to family members, friends, and therapists that Mr. Simmons had sexually assaulted her as well.  This was long before the Adult Survivors Act presented an opportunity to hold Mr. Simmons accountable for his actions by suspending the statute of limitations for sexual assault matters.

53.     Over the years Ms. Doe encountered Mr. Simmons in some social settings and for a short time was employed at a company he co-founded.  She worked hard to normalize interactions with this looming figure in the entertainment industry.

54.     Shockingly, Mr. Simmons's callous rape of Ms. Doe was not enough.  In or around March 2023, Ms. Doe went to a crowded yoga class in Los Angeles and inadvertently parked her yoga mat next to Mr. Simmons after not speaking with him for several years.  Mr. Simmons said her name and Ms. Doe looked up in shock to see him, asking him, "Is it okay if I practice here?" Mr. Simmons leaned towards her and whispered, "Of course.  What, do you think I'm gonna try and fuck you?"

---

[8] David Fear, *'On the Record' Review: Doc Gives Russell Simmons' Accusers the Spotlight*, Rolling Stone,  https://www.rollingstone.com/tv-movies/tv-movie-reviews/on-the-record-movie-review-russell-simmons-hbo-max-943145/ (May 27, 2020).

55.     Ms. Doe was horrified.  She realized not only was he unapologetic towards her personally, he did not appreciate that the assault was wrong.

## NEW YORK ADULT SURVIVORS ACT

56.     This lawsuit is timely filed under New York's Adult Survivors Act (S.66A/A.648A), N.Y. C.P.L.R. § 214-j, which, beginning on November 24, 2022, created a one-year lookback window for the survivors of sexual assault that occurred when they were over the age of 18, allowing them to sue their abusers regardless of when the abuse occurred.  Based on the analogous Child Victims Act, N.Y. C.P.L.R. § 214-g, the ASA is a landmark piece of legislation for survivors of sexual abuse to file claims otherwise barred by the statute of limitations.  The actions described herein constitute sexual offenses by Mr. Simmons under New York Penal Law Article 130 and were committed against Jane Doe when she was over the age eighteen years, for which she suffered physical, psychological, and other significant injuries as a result.

## COUNT I

## (Sexual Battery/Assault)

57.     Jane Doe repeats and re-alleges the allegations stated above in paragraphs 1–56 as if fully set forth herein.

58.     Mr. Simmons intentionally committed sexual battery/assault by sexually assaulting, battering, and raping Ms. Doe.  As described above, Mr. Simmons intentionally touched Ms. Doe and/or exposed himself in an offensive and sexual manner without her consent.

59.     Mr. Simmons's actions constitute sexual offenses as defined in New York Penal Law Article 130, including but not limited to rape, forcible touching, sexual abuse, and sexual misconduct, in as much as Mr. Simmons intentionally and forcibly penetrated and touched sexual

and intimate parts of Ms. Doe's body for his own sexual gratification.  *See* N.Y. C.P.L.R. § 214-j; *see also, e.g.*, N.Y. Penal Law §§ 130.20, 130.35, 130.52, 130.55.

60.     As a direct and proximate result of Mr. Simmons acts, Ms. Doe has in the past and will in the future continue to suffer extreme emotional distress, humiliation, fear, psychological trauma, loss of dignity and self-esteem, and invasion of her privacy.

### **COUNT II**

### **(False Imprisonment)**

61.     Jane Doe repeats and re-alleges the allegations stated above in paragraphs 1–56 as if fully set forth herein.

62.     As a direct result of these allegations as stated, Mr. Simmons falsely imprisoned Ms. Doe at his place of residence for the purpose of degrading her, abusing her, and/or gratifying his sexual desires.

63.     Mr. Simmons brought Ms. Doe to his home and office with the intent to confine her in that location so that he could sexually abuse her.  Ms. Doe was conscious of her confinement and did not consent to that confinement.  Mr. Simmons prevented Ms. Doe from leaving by physically constraining her and pinning her down so that she could not leave.

64.     As a direct and proximate result of Mr. Simmons's acts, Ms. Doe has in the past and will in the future continue to suffer extreme emotional distress, humiliation, fear, psychological trauma, loss of dignity and self-esteem, and invasion of her privacy.

### **COUNT III**

### **(Intentional Infliction of Emotional Distress)**

65.     Jane Doe repeats and re-alleges the allegations stated above in paragraphs 1–56 as if fully set forth herein.

66.     As a direct result of these allegations as stated, Mr. Simmons committed intentional infliction of emotional distress against Ms. Doe.

67.     Mr. Simmons's actions, described above, constitute extreme and outrageous conduct that shocks the conscience.  Mr. Simmons sexually assaulting Ms. Doe goes beyond all possible bounds of decency and is intolerable in a civilized community.

68.     Mr. Simmons knew or disregarded the substantial likelihood that these actions would cause Ms. Doe severe emotional distress.

69.     As a direct and proximate result of Mr. Simmons's acts, Ms. Doe has in the past and will in the future continue to suffer extreme emotional distress, humiliation, fear, psychological trauma, loss of dignity and self-esteem, and invasion of her privacy.

## COUNT IV

## (Gender Motivated Violence Act, Administrative Code of City of N.Y. § 10–1101 *et seq.*)

70.     Jane Doe repeats and re-alleges the allegations stated above in paragraphs 1–56 as if fully set forth herein.

71.     The above-described conduct of Mr. Simmons, including, but not limited to, Mr. Simmons's sexual assault and battery of Ms. Doe constitutes a "crime of violence" and a "crime of violence motivated by gender" against Ms. Doe as defined by the New York City Gender Motivated Violence Act, N.Y.C. Admin. Code § 8-903 (2017).

72.     The above-described conduct of Mr. Simmons, including, but not limited to, Mr. Simmons's sexual assaults and batteries of Ms. Doe, constitutes a "crime of violence" against Ms. Doe motivated: (i) by her gender; (ii) on the basis of her gender; and/or (iii) due, at least in part, to an animus based on her gender.

73.     Mr. Simmons committed a "crime of violence" against Ms. Doe because she is a woman and, at least in part, because he has an unlawful animus towards women.  Mr. Simmons's gender-motivated animus towards women is demonstrated by, among other things, his sexually abusive treatment of women.

74.     As a direct and proximate result of the aforementioned gender-motivated violence, Ms. Doe has sustained in the past and will continue to sustain, monetary damages, physical injury, pain and suffering, and serious psychological and emotional distress, entitling her to an award of compensatory damages.

75.     Mr. Simmons's gender-motivated violence against Ms. Doe entitles her to punitive damages and an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Jane Doe respectfully requests judgment against Mr. Simmons, awarding compensatory, consequential, exemplary, general, and punitive damages in an amount to be determined at trial; costs of suit; attorneys' fees; and such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Jane Doe demands a trial by jury on all claims so triable.


Dated:  February 13, 2024                    Respectfully submitted,


                                             /s/ Kenya K. Davis

                                             Kenya K. Davis (NY Bar #4162483)
                                             Boies Schiller Flexner LLP
                                             1401 New York Ave., NW
                                             Washington, DC 20005

17

(202) 237-9608
kdavis@bsfllp.com

Sigrid S. McCawley (NY Bar #6051460)
Daniel J. Crispino (*pro hac vice* pending)
Boies Schiller Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
(954) 356-0011
smccawley@bsfllp.com
dcrispino@bsfllp.com